IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NICOLE ALSTON, | : | |
|     Plaintiff | : | No. 1:23-cv-00643 |
| | : | |
|     v. | : | (Judge Kane) |
| | : | |
| PENN STATE HEALTH MILTON S. | : | |
| HERSHEY MEDICAL CENTER, | : | |
|     Defendant | : | |

## MEMORANDUM

Before the Court is Defendant Penn State Health Milton S. Hershey Medical Center ("Defendant")'s motion to dismiss Plaintiff Nicole Alston ("Plaintiff")'s complaint. (Doc. No. 8.) For the reasons that follow, the Court will deny Defendant's motion.

## I.  BACKGROUND[1]

Defendant hired Plaintiff as an "Information Associate" around January 3, 2011. (Doc. No. 1 at 5.) In 2018, Plaintiff pursued further educational opportunities "to begin a career in Neurophysiology." (Id.) Plaintiff's curriculum required her to perform "16 clinical hours per week while working full time." (Id.) In May 2018, Defendant allegedly offered Plaintiff a position in the Neurophysiology Department "that required a four-to-six-month training period before promotion to" a "Neurophysiology Technologist" position. (Id.)

Plaintiff alleges that she was initially "supposed to be trained a few days per week in the clinic with a woman she knew as 'Patty' until [Patty's] retirement, at which point" Plaintiff would "transition to the Epilepsy Monitoring Unit (EMU)." (Id.) Patty, however, retired early. (Id.) As a result, Plaintiff asserts that Marion Zakrzewski, Defendant's employee, informed her

---

[1] The Court draws the following background from the allegations in Plaintiff's complaint, which the Court has accepted as true in evaluating Defendant's motion to dismiss. See Lum v. Bank of Am., 361 F.3d 217, 221 n.3 (3d Cir. 2004).

that "Patty's vacancy needed to be filled immediately" and that Plaintiff was determined to be "competent enough to work in the EMU without supervision." (Id.) Accordingly, Plaintiff alleges that her training was cut short. (Id.)

Plaintiff asserts that, in September 2018, she "made a request to be promoted to the Neurophysiology Technologist position," that was denied because she had not yet received a "30, 60, or 90-day review" by Marcia Hawthorne, her mentor. (Id.) Plaintiff alleges that, some time later, she met with Ms. Hawthorne for a review, which was memorialized on a document bearing both of their signatures. (Id.) However, Ms. Hawthorne purportedly failed to submit that review—opting instead to submit "a review that was completed outside of [Plaintiff's] presence and . . . submitted without [her] signature." (Id.) Plaintiff asserts that, around November 1, 2018, her promotion request was denied. (Id.)

After her request was denied, Plaintiff asserts that she "texted Ms. Zakrzewski and emailed her several times to discuss why [she] was not promoted and whether additional training was needed." (Id.) After allegedly "neglecting to respond" to those requests, Ms. Zakrzewski ultimately scheduled a meeting with Plaintiff, Ms. Hawthorne, and another colleague named Frank Baird. (Id.) At that meeting, Ms. Zakrzewski informed her that she would not be promoted and that she needed to "win over" her co-workers. Ms. Zakrzewski also allegedly informed Plaintiff that she "was competent in all areas that would be evaluated for the promotion, but was [inconsistent][.]" (Id.) Finally, Ms. Zakrzewski informed Plaintiff that another "Neurophysiology Trainee," who was purportedly similar to Plaintiff "apart from [her] status as a member of a protected class," was "being promoted." (Id.) According to Plaintiff, the trainee "was not subjected to the treatment [she] received such as early termination of [her]

training" and having to working in the EMU "without supervision while continuing to be titled and paid as a trainee." (Id.)

Plaintiff alleges that she requested a return "to the Neurophysiology training program" after that meeting, but was "instead assigned [to] remedial training one-on-one with [Mr.] Baird," whose "abrasive and neglectful" behavior "took away from the usefulness of the training." (Id.)  Despite complaining to Carey Girvin, an employee "in the HR department," Plaintiff asserts that her "concerns were not addressed." (Id.)  Instead, she alleges that she "was harassed by Mr. Baird, humiliated, and chastised by Ms. Zakrzewski, and ignored by Ms. Girvin," all of whom acted "in their respective capacities for employment by Defendant." (Id.) Moreover, Plaintiff asserts that Ms. Zakrzewski "made racially charged statements about [her] in the presence of other colleagues" and was "determined to fire her" because of her race. (Id.)  To that end, Plaintiff adds that Ms. Zakrzewski's "performance review and PIP was a pretext for termination."[2] (Id.)  Plaintiff avers that she was terminated on January 18, 2019. (Id. at 5.)

After her termination, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission, and on January 18, 2023, received a right to sue letter. (Doc. No. 1-2.)  On April 17, she timely initiated the above captioned action by filing a Pro Se 7 Form for Employment Discrimination, even though she is represented by counsel. (Doc. No. 1.) Plaintiff also filed a motion for leave to proceed in forma pauperis (Doc. No. 2), which the Court granted on May 23, 2023 (Doc. No. 6).  Plaintiff's complaint asserts claims of racial discrimination under Title VII of the 1964 Civil Rights Act ("Title VII"), see 42 U.S.C. § 2000e et. seq. (Doc. No. 1.)

---

[2] Plaintiff does not define the term "PIP."

On July 5, 2023, Defendant Penn State Health Milton S. Hershey Medical Center ("Defendant") filed the pending motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. No. 8) with a brief in support (Doc. No. 9).  Plaintiff filed a brief in opposition on July 26, 2023 (Doc. No. 11), and Defendant filed a reply brief on August 3, 2023 (Doc. No. 12).[3]  Having been fully briefed, Defendant's motion is ripe for disposition.

At the outset, the Court notes that Defendant's motion, although brought pursuant to Rule 12(b)6) on the basis of Plaintiff's failure to state a claim, does not actually challenge the plausibility of Plaintiff's complaint.  It instead contends that Plaintiff's complaint should be dismissed "because [she] fails to adhere to the pleading standards" required by Federal Rules of Civil Procedure 8 and 10, and thus does not "enable Defendant to fully understand the nature and factual support for [her] claims and formulate a defensive response to the same."  (Doc. No. 9 at 7.)  Rules 8 and 10, however, provide independent grounds to dismiss a complaint—and the authority upon which Defendant relies supports the general view that the pleading-related deficiencies of which Defendant complains in its motion are more appropriately challenged under those Rules.  See, e.g., Bartol v. Barrowclough, 251 F. Supp. 3d 855, 859 (E.D. Pa. 2017) (considering pleading related deficiencies under Rule 8 "[b]efore undertaking any analysis of [the] [p]laintiff's claims under Rule 12(b)(6) (emphasis added)); see also Jackson v. New York, 381 F. Supp. 2d 80, 86 (N.D.N.Y. 2005) (explaining that a Rule 10(b) violation should not "be met with a . . . motion to dismiss under Rule 12(b)"); International Tag & Salesbook Co. v.

---

[3]  Plaintiff's brief in opposition, which was filed more than fourteen (14) days after the filing of Defendant's brief in support, is untimely under Local Rule 7.6.  However, because Defendant has filed a reply brief, "there is no basis to conclude that" Plaintiff's "delay in filing h[er] brief in opposition in any way prejudiced" Defendant.  See generally Bronson v. Young, No. 3:05-cv-00514, 2006 WL 2620374, at *5 (M.D. Pa. Aug. 9, 2006).  Accordingly, the Court will consider Plaintiff's brief in opposition in resolving Defendant's motion.

American Salesbook Co., 6 F.R.D. 45, 47 (S.D.N.Y. 1943) (explaining that a "complaint could very well state a cause of action and still conflict with the requirements of" Rules "8(a)(2) and (e)(1) and . . . 10(b)"). Accordingly, the Court construes Defendant's motion to dismiss filed under Rule 12(b)(6) as a motion to dismiss pursuant to Rules 8 and 10.

**II.    LEGAL STANDARD**

Rule 8 requires a complaint to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." See Fed. R. Civ. P. 8(a)(2). "Fundamentally, Rule 8 requires that a complaint provide fair notice of 'what the . . . claim is and the grounds upon which it rests.'" Garrett v. Wexford Health, 938 F.3d 69, 92 (3d Cir. 2019) (quoting Erickson v. Pardus, 551 U.S. 89, 93 (2007)). Rule 10, in turn, requires a plaintiff to state a "clai[m] . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances" and notes that "each claim founded on a separate transaction or occurrence" must "be stated in a separate count" if "doing so would promote clarity." See Fed. R. Civ. P. 10(b)(2). Rules 8 and 10 "operat[e] in tandem," see In re Hall, No. 22-cv-01951, 2022 WL 2067957, at *2 (E.D. Pa. June 8, 2022), and "[c]omplaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings,'" see Weiland v. Palm Beach County Sheriff's Office, 792 F.3d 1313, 1320 (11th Cir. 2015).

The Third Circuit has an established policy against "shotgun pleading[s]." See Hynson ex rel. Hynson v. City of Chester Legal Dep't, 864 F.2d 1026, 1031 n.13 (3d Cir. 1988). Courts in this circuit have recognized four types of shotgun pleadings: "(1) 'a complaint containing multiple counts where each count adopts the allegations of all preceding counts'; (2) a complaint that is 'replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action'; (3) a complaint that does not 'separat[e] into a different count each

cause of action or claim for relief'; and (4) a complaint that 'assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." See Bartol, 251 F. Supp. 3d at 859 (quoting Weiland, 792 F.3d at 1321–23). At bottom, shotgun pleadings "fail[,] . . . in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." See id.; see, e.g., M.B. v. Schuylkill County, 375 F. Supp. 3d 574, 586 (E.D. Pa. 2019) (same).

Finally, technical violations alone do not warrant dismissing a complaint under Rules 8 or 10. Instead, dismissal is appropriate only where the complaint, construed as a whole, fails to place the defendant on notice of the particular claims asserted. See 2 James Wm. Moore et al., Moore's Federal Practice §§ 8.10; 10.03 (Matthew Bender ed. 2023); see also Fed. R. Civ. P. 8(e)(2) (explaining that "pleadings must be construed as to do justice").

### III. DISCUSSION

Upon careful review of Plaintiff's complaint, the briefs of the parties, and the relevant authority, the Court concludes that Plaintiff's complaint complies with the substance of Rule 8 because it provides notice of her claims and defines the grounds upon which they rest. This conclusion is informed by three considerations. First, Plaintiff attests that the above-captioned action stems from the following racially discriminatory conduct, each of which is individually actionable under Title VII: termination, failure to promote, and retaliation. (Doc. No. 1 at 4); see also O'Connor v. City of Newark, 440 F.3d 125, 127 (3d Cir. 2006) (concluding that retaliation, "termination, failure to promote, denial of transfer, refusal to hire, wrongful suspension, wrongful discipline, denial of training, wrongful accusation" are all discrete acts of employment discrimination—and noting that discrete acts "are individually actionable"). Second, Plaintiff

represents, and Defendant does not dispute, that each of these grounds has been administratively exhausted. (Doc. No. 1 at 4.) This is significant because "a plaintiff under Title VII cannot bring claims in a civil lawsuit that were not first included in an EEOC charge and exhausted at the administrative level," see Johnson v. Chase Home Fin., 309 F. Supp. 2d 667, 671 (E.D. Pa. 2004) (citing Burgh v. Borough Council of Montrose, 251 F.3d 465, 469 (3d Cir.2001))—and a fundamental purpose of the exhaustion requirement is to provide a defendant with notice of a pending discrimination claim, see Pepper v. Baierl Auto. Corp., No. 14-cv-01321, 2015 WL 926546, at *3 (W.D. Pa. Mar. 4, 2015) (explaining that the "exhaustion requirement serves two purposes": "[f]irst, it puts the employer on notice that a complaint has been lodged against him and gives him the opportunity to take remedial action," and "[s]econd, it gives the EEOC notice of the alleged violation and an opportunity to fulfill its statutory responsibility of seeking to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion" (quoting Bihler v. Singer Co., 710 F.2d 96, 99 (3d Cir. 1983))). Finally, the Court notes that Plaintiff's allegations, which are in a narrative format, provide the relevant factual background for her termination, failure to promote, and retaliation claims under Title VII. They also specifically identify (1) the onset and scope of Defendant's purported discriminatory conduct, (2) the individuals implicated by her claims, and (3) their specific roles and actions in discriminating against Plaintiff. For these reasons, the Court concludes that Plaintiff's complaint provides Defendant with sufficient notice of her Title VII claims and the grounds upon which they rest. See Murphy v. Hotwire Commc'ns, LLC, No. 19-cv-05901, 2020 WL 2128472, at *6 (E.D. Pa. May 5, 2020) (explaining that the "factual allegations are pleaded with enough detail to establish the factual background of the claims, and each count specifies that Plaintiff is alleging harassment, discrimination, and retaliation under Title VII, the ADEA, and the PHRA

respectively," meaning the plaintiff's complaint "gives [defendant] adequate notice of the claims and the grounds upon which they rest"); see also Du v. McDonough, No. 8:22-cv-01526, 2023 WL 4456873, at *2 (M.D. Fla. July 11, 2023) (discussing Weiland and concluding that a complaint is not a shotgun pleading because the allegations "lay out [the] [p]laintiff's version of the events that led up to her EEO complaints and the alleged discrimination that followed," and noting that, "at this stage, the Complaint need only draw a reasonable inference that [the] [d]efendant is liable for the alleged misconduct").

In reaching this conclusion, the Court recognizes that Plaintiff's complaint contains some technical violations of the Federal Rules of Civil Procedure.  In particular, Plaintiff's complaint does not include numbered paragraphs or separate her claims by count, as required by Rule 10(b).  But as already noted, technical violations alone do not provide sufficient grounds for dismissing a complaint.  Indeed, districts courts are "[g]enerally . . . hostile to motions to dismiss for Rule 10(b) violations when the movan[t] ha[s] been put on notice of their adversary['s] positions and thus no prejudice has resulted from technical violations of the rule." See 2 James Wm. Moore et al., Moore's Federal Practice §10.03 (Matthew Bender ed. 2023).  Here, for the reasons discussed above, Plaintiff's complaint provides Defendant with adequate notice of her positions—meaning no prejudice has resulted from the technical violations in her complaint.  Accordingly, the Court will deny Defendant's motion.  See, e.g., A.B. v. Marriott Int'l, Inc., 455 F. Supp. 3d 171, 194 n.118 (E.D. Pa. 2020) (refusing to dismiss a complaint for shotgun pleadings because "[the plaintiff]'s claims [we]re directed to one defendant, Marriott[;] [h]er allegations put [defendant] Marriott on notice of the claims against it"); Schuylkill County, 375 F. Supp. at 586 (holding that, although "the Amended Complaint has some of the characteristics of a shotgun pleading, the Court will not dismiss the action in its entirety based on the

defendants' assertion that (1) each counts adopts the allegations of the preceding counts, and (2) some of the causes of action do not identify the 'role of each particular defendant in the claim'" because "[t]he Amended Complaint describes, in significant detail, specific allegations against the respective defendants").

## IV. CONCLUSION

For the foregoing reasons, the Court will deny Defendant's motion to dismiss. (Doc. No. 8.) An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania
